This case is 416-0497, City of Urbana, Illinois v. Platinum Group Properties, LLC for the appellant, James Martinkus, the appellate, Craig Unruh. Thank you very much. Please be seated, and good morning to you. If you're ready to proceed, Mr. Martinkus. Good morning, Your Honor. The first question I have to ask this court is, why is this case even here? We have maintained our position that the Urbana City Ordinance first requires a failure to comply ticket to be issued. If, in fact, you agree with that proposition, then nothing else really is relevant, because the city admitted and has failed to, in fact, comply with its own procedure. And I know under Kane County, a case in my brief, a failure to comply with any such procedure set forth in an ordinance renders the entire procedure void. And if you look at the ordinance, I think this is important. You start with 106.4, where this is the amended ordinance as of October 7, 2013, which is that issue. And I referenced page 22 of my brief. It says, specifically, the court official or his designee shall, cross it off the word may, and says shall impose a penalty for failure to comply with any of the deadlines set forth in PM 104.61. Such penalty shall be imposed with the issuance of the failure to comply ticket. Then you have failure to comply tickets 106.41. It says the court official or his designee shall, and again, words are crossed out, is authorized to, goes from permissive to mandatory, issue a failure to comply ticket to any owner, operator, or person that the court official determines has violated any of the deadlines for compliance. When was that ordinance amended? October 7, 2013, well before the filing of this complaint. Before the filing of the complaint, but after the enforcement provisions were kind of started. Yeah, and Judge, no one's ever raised that issue, but I think in general, if it's procedural in nature as opposed to substantive, procedural is applied prospectively. Substantive, obviously only retroactively. So, I'm sorry, just the opposite. You can't permit someone on a substantive issue to be found by new legislation. But with respect to procedure, certainly the procedures here was designed by the city to permit the city only to proceed to protect the landowner, to give them the opportunity to comply. The failure to comply ticket sets forth much, much smaller fines. It provides an internal administrative proceeding whereby if you can't resolve it, you have the right to appeal. So there's no question, in my thought at least, that when that ordinance was in fact adopted, the city was bound to follow it. And no one has ever raised that issue, but that would be my view on it, Judge. And clearly it says that if a defendant fails to correct a violation of this code within the timeline set by the code official, the city may file a complaint in the circuit court seeking order of remedy in all violations. And then the statute, the ordinance is crossed out in lieu of issuing a failure to comply ticket. But once again, it's clearly demonstrative that prior to this amendment, the code enforcer could have issued a failure to comply ticket, but didn't have to. But now the language in lieu of issuing a failure to comply ticket is specifically omitted. It specifically says if a defendant fails to settle a failure to comply ticket issued by the code official, the city may file a complaint in the circuit court for fines. So now you have what I believe is a clear condition precedence to filing a complaint. And it has major consequences. With respect to my client, had he actually been given the failure to comply ticket, he could have settled this whole thing for $2,150 instead of being exposed to all of these particular fines. There's no issue, I think, with respect to the fact that there was a deadline given under this particular provision that they're referring to. This is clearly a deadline set by this code officer, July 16, 2012. He then extends it to November 30, 2012. He extends it again to a final one, February 26, 2013, for the apartments at 1302, and March 1, 2013, for the apartments at 1304 and 1301. So here you have this series of offenses and deadlines that the code official is, in fact, alerting my client to. And then once all this is concluded, if he hasn't got compliance, he then has to file a failure to comply. And that's clearly the statute. If you look in the reply brief, I put down a memo from the legal department to the city, which clearly, clearly shows the support for the change in sorts. He didn't want to have this haphazard process whereby the code official could, if he wants to in one case, give an opportunity to comply by issuing a failure to comply ticket and resolve it within a very limited period of time and a limited fine. And if he doesn't feel like it in other cases, just file suit. That was the purpose of the amendment, and the city failed to follow it with major consequences, in this case, to my client. When the city failed to follow it, it wasn't in effect. Yes, it was, Judge. It was at the time of filing the complaint? No. At the original time that the notice was given, that wasn't in effect. You're saying that it was in effect at the time the complaint was filed. I understand that. Right. But, again, I don't remember the – you're right about that. Yes, that's right. But the question becomes, if, in fact, you pass an ordinance and you still have an opportunity to provide failure to comply tickets. I mean, he could have still given failure to comply tickets. There was no preclusion by the city ordinance. It didn't say, now you can no longer do it if, in fact, you haven't done it for X period of time. So the city ordinance could have been followed and should have been followed. I mean, the intent of the city of Urbana was to provide a consistent scheme so that property owners had some opportunity to work with the city to try to find compliance. That was the purpose of these changes. So they didn't do that. Did trial counsel object to that? I can't remember. Judge, I don't think that trial – I think in its answer, if I remember, or at least in its answer to the motion for directive verdict, they simply admitted that, in fact, there was no compliance. I wasn't the lawyer who tried the case. I don't remember at all. But I mean, they didn't raise the issue about this failure to comply at the trial court level. They didn't. We did. We said, hey, you never followed the procedure. But they never raised the issue, as far as I know, that, no, that procedure wasn't necessary because of the timing here. That was never raised. No, I think you're maybe misunderstanding. No, I'm sorry. I know you did. You've raised it on appeal. My question is, did trial counsel for your client object to having to proceed by way of a lawsuit when they weren't issued an appeal? Absolutely, Judge. That's the route, yes. That's what I'm saying. There's no issue in that, yes. I clearly remember that. That was one of the bases for our motion for directive verdict, that, in fact, they never filed a failure to comply ticket as a condition preceded to bringing the suit, that you should have done this before you filed suit. I would also comment upon the actual fines here that were imposed and suggest to the court why I believe the fines are so excessive and they're inconsistent with what the Supreme Court rule requires. First of all, if you look at Supreme Court Rule 572, it talks about the city setting forth the parameters of what a property owner could be fined. He should be put on notice as to the minimum and maximum. In this case, the city filed a complaint and it specifically said, Judge, impose a fine of $15 per day from June 1, 2012, through May 21, 2014. Then it filed a second amendment complaint and it said, well, from June 12, 2014, through June 25, 2014, that's the date when the judge cut off, impose a fine of $200 to $750 a day. The court found $200 a day was appropriate. If you add those numbers up, if you just do the math and set forth in the brief, that comes to $13,585 per building, or a maximum fine that my client should have been exposed to, $40,755. Throughout civil practice, this isn't a criminal case, there is a limitation. When you file a complaint, you put in something that gives rise to what the expectation is so that the defendant knows what the potential claim is, what damages could be assessed against him. That's all fundamental fairness. Mr. Martinkus, I think this rule references Section 2-604 of the Code of Civil Procedure in the committee comments to Rule 572, and the cases that have interpreted Section 2-604, I think, pretty uniformly indicate that the plaintiff is not restricted to the relief that is specifically requested in the prayer for relief. That the court, or whatever the prior fact is, can go beyond that specific prayer for relief. Are you familiar with those cases? Judge, I am somewhat, but in all honesty, I focus more on the committee comments to Subsection D of Rule 572. That was my take on it, where it seems to me those comments make it clear that the property owner should be advised as to what he is exposed to. I don't disagree with you there, Your Honor. I think there is some discretion here. If Rule 572 does apply to this type of a case, and it's still not clear about that either, but if it does apply, then you're indicating that the committee comments that state that the paragraph is intended to make it clear that a prayer for a penalty within the penalty range authorized by the ordinance is sufficiently specific to advise the defendant of the maximum penalty to which they are exposed. That that language is limiting on the plaintiff in an ordinance violation case. In other words, whatever the plaintiff sets forth in the prayer for relief is the maximum that can be... That's right, Your Honor. I think the plaintiff in this case could have simply said, Judge, if you find violations, impose any fine within 200 to 750. But that's not what they did. They specifically put my client on notice that they're seeking a fine of $15 per day from June 1, 2012 through May 21, 2014. And that's my only complaint here is that when you tell someone, a citizen of the city of Urbana, a property owner, that you're only seeking fines of $15 per day, it just seems fundamentally unfair to me that after the end of the trial, the court imposes a penalty of $200 per day. That's my point. I don't think that's consistent with due process. Nor do I think it's consistent with the nature and effect of these sort of cases. Property owners should be given some leeway with respect to what the city is trying to do. What is it trying to impose? So I think there's an issue with respect to whether or not the court imposed a fine. Mr. Martinez, could the court have fashioned a fine to give the city the $40,755 it requested by using the appropriate fine schedule but not finding each day to be a violation? Yes, sir. In fact, I raised that exact issue because that obviously was a concern I had too. But I set forth in brief my math. You can take that $15 per day because this is very important to another argument I'm going to make momentarily here. The statute does not require, it does not say, shall impose a fine for each day of violation. It says may. So because it says may, a court could have construed that request to the $200 per fine but using more limited days. And I set forth the math in my brief. But yes, I think that really could have happened. The other issues I have with respect to the trial judge's errors, I think clearly the court is confused. The statute, 106.4.3, unequivocally says each day of noncompliance may constitute a separate offense. The court in its ruling says each day the building is in violation is a separate violation. He makes it clear that he believes he has no discretion with respect to applying a fine on a per diem basis for violation. And I point out cases that show statutes where the language is shall. Shall impose a fine for each day. So clearly I think the trial court was confused with respect to what authority he had. And I cite cases in my brief that say if the court finds that a judge is confused with respect to the range of penalties, that alone isn't sufficient to send it back. The other thing I believe he's confused about, I quote the case of McHenry v. Suvada. Suvada basically held that once the building was no longer occupied, no longer was condemned, you have no reason to continue the fines. And I don't think it's mandatory upon the trial court to make the fining. But in this case, Judge Kennedy clearly said that he does not believe that there's any limit of violations based upon occupancy. There's nothing in the code that says you have to extend it past occupancy or condemnation. And in this instance, if you remember, the ultimate fact is that the channels connecting to this building, all of this apparatus was safe. The assumptions made by the city engineers and even to some of my clients' engineers, upon demolition proved to be false. There was no risk. But again, the point I'm making is that this is a case where the court at least should have known it had the authority to consider ending the dates for fines once the building was condemned and once no occupancy continued. So that was another concern that I raised here with respect to the breadth of the fines. Mr. Martinez, I know you've got a lot to go through here, but I want to go back just to the prayer for relief. Yes, sir. Was there argument made to the trial judge by the city as to what the total fine should be? Or did the trial court do that on its own? Judge, I remember when I read all this that there were some arguments. I can't sit here in all honesty and tell you if I remember what exactly the city asked for. But the trial court made its findings without – it did set forth the timeframe in which it made its rulings, but it didn't try to explain exactly what reasons it gave this or so forth. So I can't remember in all honesty. I don't want to misstate anything. I don't remember exactly what they argued. If they argued for a fine greater than what in fact was imposed or not. So I apologize. I just don't want to mislead the court on that issue. Thank you. Certainly. A couple other things that I'd like to address to the court. After the case – and, again, I think I put in my brief that the Supreme Court rules, I think, contemplate clearly a situation where the court, if it makes a finding that there were violations, that you have a separate hearing in which you make a determination. What is an appropriate fine? Should they keep each day as a separate violation? What should I consider? What was the cooperation of the individuals? All those things. Supreme Court rules talk about that. And in this case, there was nothing like that. All the judge did is he announced his ruling and then imposed his fine. I don't believe that's what's contemplated at all in cases, nor should it be. The court has no opportunity to hear from the individual about what the ability to pay and what should be appropriate and all these considerations. So that's part of what I think I'm concerned about, too, is that we have this blanket imposition of a fine and the trial court believes he has no discretion as to each day and believes that he has no discretion to end it once the property is condemned and no one is living there. So those are my concerns there. I also have a major concern with respect to the additional penalties that the circuit clerk imposed. The circuit clerk used a criminal statute and code to impose an additional fine of $118,610. This criminal code does not apply to building ordinance cases. And I know I can't talk about Rule 23 cases, but this court in 2016 ruled exactly on that issue and exactly what I'm arguing. So I know I can't use it for any particular purpose. It's tough on me when this exact issue was ruled upon within the last six months. But in any event, and then finally, I do think you have to look at whether or not a... Well, at least you didn't cite it. I apologize.  I apologize. But I think the final argument I've got to make is my client gets hit with a fine that costs $592,310 after he already puts in $200,000. He has no income for this building for two or three years. There's something that shocks my conscience. Maybe it doesn't shock yours, but it certainly shocks mine. And I think that when the auto court talks about this, that the Constitution doesn't permit a fine that is so shocking. And I think this is almost a taking of someone's property. And there's no basis for which a fine that costs almost $600,000 should be imposed in this case, especially in light of the fact that they don't follow their own rules, that they're failure to comply ticket, which gives my guy a chance to get rid of it independently for $2,200. There's limitations with respect to what the city is asking for. The trial court doesn't realize that it can limit it. It doesn't have to be imposed each day. So, you know, all I'm asking is to consider all those things. This is just not a fair deal for my client. Thank you. Thank you, Your Honor. Rebuttal, Mr. Unrath. Thank you, Your Honor. Craig Unrath, representing the plaintiff. I can't believe I'm saying those words, but it's quite refreshing to do so. Platinum is arguing that we take three years of some very profoundly serious building code violations and a clear record of lack of diligence in repairing these things, and a considerable amount of time while people were living. These apartments were occupied while these problems existed. And we should wipe all of this away because 14 months, 16 months, after this entire process was initiated, a procedural rule was changed in the city ordinance. I suggest that that makes absolutely no sense. I asked the court to take a look at the chronology of events, and I will not restate the facts in detail, but this matter began in June 1st, 2012. It was the initial notice of code violations. Then the deadline for repair was set in July. This was later extended to September. Then it was extended to November. In November, the city inspected the property and found that nothing had been done. It's also important to point out that the city notified Platinum that we still don't know what's holding up these upper-level walkways. They are pulling away from the buildings. The support beams are bowed out, and you can see that in the appendix to our brief. The brick mortaring is where the walkways hit the building is bowed out, suggesting that it's brick holding this up, and that brick is falling down. We have a risk of falling concrete, falling masonry. We have cracks in the pavement. We have sidewalks leaning toward the building that would force water toward the building, and none of this was done. Now, eight months after they were informed that they need to look into this, they need to pull away some of that masonry and find out and determine just what's holding that balcony up, they still hadn't done it. Remember, this started in June 2012. It's February 2013 that their own architect said nothing has been done to remedy this situation, and it was at this point that they finally began to pull away masonry to find out just how these balconies are connected. And sure enough, the results were inconclusive. They still didn't know, even in February, eight months after this whole thing had begun. Now, they finally began work, I believe, sometime in May 2013. We're talking about 11 months afterwards. We finally have one contractor, a masonry contractor, come in and start working on this building. Now, his work was completed, and that was just one portion of the work, was completed in the autumn of 2013. Now we have an ordinance that's amended. Now, after all this time, after experts have been hired, structural engineers, both the city and Platinum have been reviewing this building, looking for the flaws, trying to determine how to fix it. After all this has been going on, the city working with them to try to get this problem resolved. Then they changed the ordinance, and Platinum would have us, have you believe, that we should, at that point, have issued a three-day failure to comply ticket. It just seems to me to be unthinkable. We've been at this for 16 months, and now we're going to issue a ticket saying, you need to fix all your problems in three days. Does that really make sense? It makes no sense to me. Mr. Unruh, bookmark where you're at, and I'm sorry, because I'm going to have you fast forward here. But it's an issue that I want you to be able to address during this portion of your argument. It has to do with the second amended complaint that the city filed during the course of trial. And I just want to first verify that it was filed during trial. I believe, yes, it was. Okay. And the city prayed for certain relief in that second amended complaint, and it's set forth at page 44 of the appellant's brief. Does it accurately recite what the prayer for relief stated? I would have to double-check. Okay. In any event, it is set forth here, and this is all that I have to go off of. It seems to me that the trial court, if Mr. Martinkus' math is correct, he calculates a total fine of $40,755, assuming that prayer for relief is vastly different than what was eventually ordered by the court. Would you agree? Yes, sir. Yes, I would agree with that. My concern is we have a situation where the city ended up with a fine that was greatly in excess of what it had prayed for. And is there a problem with that? No, there's not, Your Honor. Now, I agree with you that the fine was improperly pled. However, the court has no choice but to follow the ordinance. In other words, an improper pleading cannot change the trial court's duty to follow the ordinance. Well, let's say the defendants didn't even appear in this case, and the city proceeded to obtain a default judgment. Case law would say, case law that interprets 2-604 would say that they're limited to what is contained in their prayer for relief, right? I believe you're correct, Your Honor. So in that event, the court wouldn't be restricted by the ordinance itself. It would be restricted by the prayer for relief. Your Honor, I don't believe it would. I think that the court, you know, the statute is very clear as to what ordinance must be applied. Now, to suggest that a mistake in the pleading, perhaps even a Scrivener error, would somehow relieve the court of its duty to follow the law, Your Honor, quite frankly, I don't know. I don't agree with that. Do you know why the city asked for a $15 per day fine? No, I do not, Your Honor. Because I look at the ordinances here, and they're very clear. And one thing I'd like to point out to the court is that had we filed a three-day failure to comply ticket, the penalty schedule is much higher than the court actually imposed. In other words, the violations that are imminent health, life, safety threat to occupants, minimum fine, $750 plus $750 per day until corrected. The court, plaintiff makes a very large point here, that the court felt it had no discretion, that it was locked into this. And that is absolutely untrue, Your Honor. And that's apparent from the court's ruling. The court cut off the fines. In other words, if it felt locked in, if the court felt that it had no discretion in its award of damages, it would have had to bring this all the way out into, I believe, April 2015 is when they finally passed a full inspection. The court didn't do that. The court shaved off quite a bit of time period that no fines were imposed. So I think it's implicit in the court's judgment that discretion was applied in this case. I also do not see anything in the ordinance, and this is directed to your question, Judge Harris, I don't see anything in the ordinance that would authorize a court to impose a fine less than what is called for by the ordinance. The court certainly has discretion, but the statute is quite clear that a minimum fine of $200 a day must be imposed. Well, Counsel, if this had proceeded to a hearing on the fine, which it didn't hear, it sounds like, just based on what I've read in the briefs, that the court on its own calculated the fine and it wasn't that there was a hearing as to what the fine should be in this case. Is that accurate? Not entirely accurate, Your Honor. The court ordered both parties to submit memorandum of law, basically written closing arguments. And the issue of fines and the amount of fines was directly addressed in those, as you might call it, post-trial memoranda. So was there an actual hearing in open court? No. But was it litigated? Absolutely. But if there had been a hearing of the sort that you mentioned, and if counsel for the city had stood before the court and said, Your Honor, I believe that consistent with our prayer for relief, fines totaling $40,000, whatever the specific amount is appropriate here, that the court could not order that because it would, sua sponte, have to follow the ordinance and enter a judgment for something well in excess of that $40,000. In other words, the city's request to the court couldn't be honored by the court? I don't believe it could, Your Honor, because to do so would be to encourage courts to completely ignore the statute. The statute becomes meaningless if the court can just look at a pleading and say, well, I'm going to ignore the plain language of the statute that sets a minimum. The court just reduced the number of days it found a violation and multiplied that number by 200 and come up with $40,750 for their vows, which is what the city requested in the first place. The imposition of a fine is entirely within the court's discretion, and it will only be altered if we find an abuse of discretion there. This is the highest standard of review that this court faces. The court did exercise its discretion in reducing the number of days, but for this court to suggest that it should have reduced more days to somehow match the incorrect pleading, I think is asking too much. Certainly, there is no abuse of discretion. You said it's asking too much, but the city asked for $40,755, and the court gives them 10 times that and then slaps on another $118,000, or I guess the court did, in costs. Where's the fairness in that? Fairness is that the court followed the ordinance to the letter. But the city is the entity that's pursuing enforcement of the ordinance, and they've asked for the $40,000 in fines. It's almost like this is a civil case, a quasi-criminal, I suppose, but aren't they stopped from getting any more than they've asked for? It's almost like an estoppel. I don't know that there was any detrimental reliance on the part of Platinum that would result in an estoppel. When you're served with a complaint that says we're asking for $15 a day versus $200 to $750 a day, it could affect how you proceed, I suppose. But again, we're asking that the court ignore the plain language of the statute that sets a minimum. And I don't know how we can find an abuse of discretion. I guess the point I'm making is it's the city's ordinance, and they're the ones that are pursuing the remedy. So it's not like some statute that the legislature enacted. It's an ordinance that the municipality enacted, and they're the plaintiff. So it's their own ordinance, they're the plaintiff, and they're asking for $40,000. And does that, again, authorize the trial court to ignore the plain language of the ordinance? And that sets the question there. That would be a clear abuse of discretion. The ordinance states that there is a minimum fine. The court can't ignore that due to an error in the pleading. So if there's a way for the court to give the city the $40,000 it requested, by considering the number of days it's going to say that the defendant was not in compliance, and instead of using the court's discretion in awarding that, decides not to do so, and gives 10 times that amount, that would not be an abuse of discretion. No, Your Honor. I think that any time the court follows the plain language of the statute, I don't see how we can find an abuse of discretion. I got another question for you. As I understand it, there were new permits issued on June 5, 2014. Is that correct? Yes. Then, six days later, the complaint is filed. Is that correct? I would have to check my notes to be sure about that, Your Honor. The permits that were requested on June 5, 2014, as I understand it, were approved, but I can't tell when they were approved. Can you answer the question I'm posing? That is, when were those approved? And I guess really what I'm getting at is, were they approved before the suit was filed, or subsequently, to the time the suit was filed? June 25 or 2014? I think 2014. Did I mistake that? If I did, then I can withdraw the question. I'll ask then. Maybe I've stated my inquiry wrong. Second permits were granted, correct? Oh, second permits. Okay. We had permits granted in 2013. Okay. So my question, there were no permits applied for on June 5, 2014? My recollection is that the permits were issued in 2013, and that work began, and I know this for a fact, that work began, masonry work began, in May of 2013. Right, but I think what Justice Kerr is getting at is, in May 2014, the permits were revoked. They've been revoked a couple of times. They were revoked in November of 2013 because no work had been done. I believe 180 days had gone by, or 90 days had gone by. They inspected the property, and there had been no activity. Well, but I think from November, I think what the facts were, were that on November 21, 2013, and since then they'd been inspecting the buildings, no work had taken place, and then the permits were revoked in May of 2014. And then there was a second application for the permits on June 5, 2014. Your Honor, I would have to check my notes. Okay, well, let me ask this then. Were permits approved after the suit was filed? Do you know the answer to that question? I believe that that's not true. I believe that the permits were issued prior to filing the suit. The work was still progressing at the time the suit was filed. Repairs still had not been completed. So, just so I'm clear on this, you're saying there were no permits approved just days before the suit was filed? Your Honor, I can't answer that question. I would have to check the record. And this was an issue not raised or discussed in the briefs on either side. I would have to. I agree with that. It's just something that kind of concerned me, so I thought I'd ask the question. I'm sorry. If there are no further questions on the improper pleadings, I would just like to return for just a moment to the question of whether a Feather to Comply ticket should have been issued. One thing that, at the outset, I found it, as I was saying earlier, I find it remarkable that we spent 16 months working with these folks, trying to get these building code violations resolved, and then suddenly a new procedure goes into effect retroactively. Now we have to give them a three-day Feather to Comply ticket. Now, had we issued that ticket, well, I guess that that would cover everything moving forward from that date. What about the last 16 months of code violations where nothing was done here? Is that gone? Because if they pay that fine, we can't go after those violations. It would result in a double jeopardy. There's another point here, is that there are, in the ordinance itself, there are two separate penalty schedules. One of them for Feather to Comply tickets and the other for civil actions under 106. They're two completely different schedules. Why would they have two separate penalty schedules? One for a Feather to Comply ticket and another for under 106 for a civil suit. It makes no sense. The council had made a number of points about his diligence or Plattman's diligence. We suggest that to submit that there was absolutely no diligence in this case. The fact that we have potentially, even their own experts suggested that upper walkways might be in danger of collapse. He said that in February 2013. And for the first time, that's when they finally started doing a pulling brick away, a masonry way, to find out just how these things were attached. And they still didn't know. In my view, there was a complete lack of diligence. And that lack of diligence certainly supports the amount of the ward that the trial court issued in this case. If the court has no further questions. Thank you very much. Thank you very much. Is there any rebuttal? A couple of points. On this issue of diligence, I think that's kind of a convoluted mess, I'll be honest with you. But I don't think there's any question that much of the delay had to do with Mr. Lozar, Mr. Kaponik, Mr. Wolfe. My client wasn't an expert.  Maybe he could have done it quicker. But that doesn't go to these findings and so forth. It's just one element. Counsel keeps talking about an abuse of discretion. Well, that's part of it. But I think, clearly, you're talking about a limitation. If I'm placing a person on notice, and this is the maximum I'm asking for, it goes back to what you're arguing. It shouldn't seem to me, it shouldn't be a case where my client then can be exposed to all this other stuff. And I think there's a clear difference between a statute and an ordinance. It is the city's ordinance. They can waive, I suspect. Why can't they waive to find their ticket? It doesn't suggest that you couldn't do it. This issue here of could they have complied with a notice, a failure to comply ticket. They could have. There's nothing in the ordinance that says you can only extend this so long before issuing a failure to comply ticket.  July 16, 2012, November 30, 2012, February 16, 2013, March 1, 2013. So there's clearly this whole history of extensions by the code inspector. At that point, you had an ordinance in effect. You could certainly have, at that point, issued the failure to comply. I hope you look at this from a reasonable standpoint. And what happened here is not reasonable. Thank you. Thanks for your arguments. The case is submitted. The court stands at recess.